UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY BARNETT,

        Petitioner,

v.                                  CASE NO. 05-CV-70063
                                  HONORABLE JOHN CORBETT O'MEARA

RAYMOND BOOKER,

        Respondent.
_____/

**OPINION AND ORDER GRANTING PETITIONER'S MOTION TO AMEND,
DENYING PETITIONER'S MOTIONS FOR
APPOINTMENT OF COUNSEL AND AN EVIDENTIARY HEARING,
AND DENYING THE HABEAS CORPUS PETITION**

Petitioner Gregory Barnett has filed a *pro se* habeas corpus petition under 28 U.S.C. § 2254. The habeas petition asserts three claims, which challenge Petitioner's state convictions for first-degree murder and possession of a firearm during the commission of a felony (felony firearm). Also pending before the Court are Petitioner's motion to amend his habeas petition to include two additional issues and his motions for appointment of counsel and an evidentiary hearing.

Respondent has filed a responsive pleading in which he urges the Court through counsel to deny the habeas petition on the merits. Because the Court agrees that there is no merit in Petitioner's claims, the habeas petition will be denied.

**I. Background**

On May 25, 2001, a circuit court jury in Detroit, Michigan found Petitioner guilty of first-degree, premeditated murder, MICH. COMP. LAWS § 750.316(1)(a), and felony firearm,

MICH. COMP. LAWS § 750.227b.  The convictions arose from the fatal shooting of Douglas Gibson on June 27, 2000, in Detroit.  The trial court sentenced Petitioner to two years in prison for the felony firearm conviction and to a consecutive term of life imprisonment for the murder.

Petitioner raised his habeas claims on appeal from his convictions and sentence. The Michigan Court of Appeals affirmed his convictions in an unpublished decision, *see People v. Barnett*, No. 239517 (Mich. Ct. App. Sept. 16, 2003), and, on February 27, 2004, the Michigan Supreme Court denied leave to appeal, *see People v. Barnett*, 469 Mich. 1017; 677 N.W.2d 24 (2004) (table).

Petitioner filed his habeas corpus petition on January 7, 2005.   The grounds for relief read:

>   I.    The trial judge erred in refusing to grant a continuance to locate a witness critical to the defense.
>
>   II.   The judge erred in refusing to instruct the jury on the lesser offense of manslaughter.
>
>   III.  There was insufficient evidence adduced at trial to convict Mr. Barnett of first-degree premeditated murder.

In a motion to amend the habeas petition, Petitioner argues that he is actually innocent of premeditated murder and that the trial court's jury instruction on reasonable doubt was a misstatement of the law.  The Court grants the motion to amend, but concludes for reasons given below that none of Petitioner's claims warrant the writ of habeas corpus.

## II.  Statement of Facts

The trial testimony and relevant facts have been accurately summarized by the Michigan Court of Appeals in the following manner:

> This case arose when [petitioner Gregory] Barnett shot and killed twenty-

one-year-old Douglas Gibson as he stood at the intersection of Floyd and Wetherby Streets in Detroit. Witnesses who testified at trial had overheard Gibson, who had a learning disability and had been hospitalized for depression, threaten Barnett and his wife in the days before the shooting. Although Gibson had been prescribed medication for his mental disorders, he had recently stopped taking it. Patricia Gibson, Gibson's mother, testified that Gibson did not act aggressively toward her, but she had seen him act aggressively toward others. After learning that Gibson had argued with Barnett a few weeks before the shooting, she and her husband told Gibson to stay away from Barnett.

Kelvin Watts, who lived in the neighborhood where the incident occurred, testified that one or two weeks before the shooting he saw Gibson standing in front of Barnett's house having a heated discussion with Barnett, and he heard Gibson tell Barnett that he was going to kill Barnett and his wife. Eddie Pauldo, a neighborhood acquaintance of Barnett, testified that he saw Gibson and Barnett together four or five days before the incident, heard Gibson threaten to beat Barnett up, and noticed that the threat upset Barnett. Winston Harris, Gibson's cousin, testified that on the morning Gibson was killed, Barnett told him that if Gibson did not leave him alone he was "going to do what he had to do." Harris said he told Barnett to speak with Gibson's mother.

Patricia Gibson testified that at 5:50 p.m. on June 27, 2000, her son went by bicycle to his friend Andre Williams' house to see Williams' new puppy. Williams lived on Floyd Street, which ran perpendicular to Wetherby, where Barnett lived. Kelvin Watts' uncle[,]Willie Watts[,] drove to Williams' house around 6:00 p.m. and parked on Wetherby. When Willie Watts arrived, Gibson was talking to Williams. Willie Watts called to Williams, who walked over to where Watts was parked, while Gibson stayed on his bicycle next to the car in Williams' yard.

Approximately five minutes after Willie Watts and Williams began to talk, Watts heard a gunshot behind him, and then saw Barnett carry a shotgun across Wetherby and head toward Floyd Street. Willie Watts said that after Barnett walked by him, Barnett shot the shotgun again and stated, "I told you I was going to kill you if you keep messing with me." According to Willie Watts, Gibson remained on his bicycle, did not appear to have a weapon, and did not move or say anything. Willie Watts testified that Barnett fired a third time while standing in a neighboring yard on Floyd, Gibson fell, and Barnett turned and walked away.

Kelvin Watts testified that he was removing tools from his trunk when he heard a "pop" and saw a person with a rifle in his hand. Kelvin Watts said that he began walking down Floyd toward Wetherby, heard a second and third shot, and saw Barnett holding a rifle. When Kelvin Watts arrived at the corner of Floyd and Wetherby, Barnett had turned and was walking home and Gibson was lying

3

face down on the ground.

Detroit Police Officer Lawrence Covington arrived at the scene shortly thereafter and began interviewing witnesses. Covington stated that he was approached by someone claiming to be the brother of the perpetrator and was taken by this person to Barnett's house. Barnett came out of his house and spoke with Covington. After Covington arrested Barnett and read him his rights, Barnett told Covington where the shotgun was. Detroit Police Officer Steven Baylor recovered the wadding from a shotgun shell and three shell casings at the scene and a shotgun and box of ammunition from Barnett's bedroom. Wayne County Medical Examiner Carl Schmidt, M.D., testified that the cause of death was a shotgun wound to the chest.

At trial, defense counsel informed the trial court that one of Barnett's witnesses was not present to testify, and because of a conversation counsel had with the witness the previous night, counsel did not believe the witness would be able to testify. According to defense counsel, the witness would testify that Gibson threatened to kill Barnett, rape Barnett's wife, and blow up Barnett's house. The trial court ruled that there was no reason to delay the trial.

Before the defense rested, defense counsel requested an instruction on voluntary manslaughter, a cognate offense. However, the trial court explained that before an instruction on a cognate offense is given there must be sufficient evidence for the jury to find that the offense did in fact occur. Voluntary manslaughter occurs when the killing was committed in the heat of passion, was caused by adequate provocation, and occurred without a lapse of time during which a reasonable person could have controlled his passion. The trial court refused to give the manslaughter instruction on the basis that there was no evidence on the record to support it. The trial court did instruct the jury regarding self-defense, as requested, and instructed on both first-degree murder and second-degree murder.

During deliberations, the jury requested further instructions regarding the meaning of "justification." The trial court informed the jury that "justified" meant that the killing was either excused, self-defense, or an accident. Defense counsel objected, arguing that the prosecutor must prove a defendant did not use self-defense. The trial court refused to give any further instruction.

### III. Standard of Review

Habeas petitioners are entitled to the writ of habeas corpus only if they can show that the

state court's adjudication of their claims on the merits–

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000) (Justice O'Connor's majority opinion on Part II). A state court's decision is an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. at 413.

"[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Id*. at 410 (emphasis in original). "[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id*. at 409.

> The state-court decision need not refer to relevant Supreme Court cases or even demonstrate an awareness of them. *Early v. Packer*, 537 U.S. 3, 8 (2002) (per curiam). Instead, it is sufficient that the result and reasoning are consistent with Supreme Court precedent. *Id*. A state court moreover does not act contrary to clearly established law when the precedent of the Supreme Court is ambiguous or nonexistent; it may hold a view that is different from [the Sixth Circuit Court of Appeals] or another federal court. *See Mitchell v. Esparza*, 540 U.S. 12, 17 (2003) (per curiam). Ultimately, AEDPA's highly deferential standard requires that this court give the state-court decision "the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam).

5

*Slagle v. Bagley*, 457 F.3d 501, 513-14 (6th Cir. 2006).

> Furthermore, state findings of fact are presumed to be correct unless the defendant can rebut the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Finally, review is conducted in light of the law as it existed at the time of the final state court decision, *Teague v. Lane,* 489 U.S. 288 (1989), unless an intervening constitutional decision announces a "watershed" rule of criminal law with implications for the fundamental fairness of the trial proceeding. *Caspari v. Bohlen,* 510 U.S. 383, 396 (1994).

*Baze v. Parker*, 371 F.3d 310, 318 (6th Cir. 2004), *cert. denied*, 544 U.S. 931 (2005).

### IV.  Discussion

### A.  The Lack of a Continuance

Petitioner alleges that the trial court deprived him of his constitutional right to present a defense by refusing to grant a continuance so that he could locate a critical defense witness named Allen Farria. The Michigan Court of Appeals concluded on review of this claim that the trial court did not abuse its discretion in proceeding without Farria because Petitioner's claim of self defense was not viable and because an unbiased person could conclude that there was justification for the trial court's ruling.

### 1.  Legal Framework

The Supreme Court has stated that

> [t]he matter of continuance is traditionally within the discretion of the trial judge, and it is not every denial of a request for more time that violates due process even if the party fails to offer evidence. . . .   There are no mechanical tests for deciding when a denial of a continuance is so arbitrary as to violate due process.  The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied.

*Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  Stated differently,

> [a] trial court's failure to grant a continuance to enable a defendant to exercise his constitutionally protected right to offer the testimony of witnesses and to compel their attendance may, in some circumstances, constitute a denial of due process. *See Bennett v. Scroggy,* 793 F.2d 772, 774 (6th Cir.1986). "When a denial of a continuance forms a basis of a petition for a writ of habeas corpus, not only must there have been an abuse of discretion but it must have been so arbitrary and fundamentally unfair that it violates constitutional principles of due process." *Brown v. O'Dea,* 187 F.3d 572, 580 (6th Cir.1999) (quoting *Bennett,* 793 F.2d at 774) (internal quotation marks omitted), *petition for cert. filed,* 68 U.S.L.W. 3496 (U.S. Jan. 24, 2000) (No. 99-1264). To warrant habeas relief, "[t]here must also be some showing that granting the continuance would have furthered the court's attempt to secure a just determination of the cause." *Bennett,* 793 F.2d at 775. [The Sixth Circuit has] considered the following factors in determining whether an accused was deprived of his right to due process by a denial of a motion for a continuance: "the diligence of the defense in interviewing witnesses and procuring their presence, the probability of procuring their testimony within a reasonable time, the specificity with which the defense is able to describe their expected knowledge or testimony, the degree to which such testimony is expected to be favorable to the accused, and the unique or cumulative nature of the testimony." *Id.* at 774 (quoting *Hicks v. Wainwright,* 633 F.2d 1146, 1149 (5th Cir.1981)) (internal quotation marks omitted).

*Mackey v. Dutton*, 217 F.3d 399, 408 (6th Cir. 2000); *see also Broom v. Mitchell*, 441 F.3d 392, 414-415 (6th Cir. 2006) (explaining that the denial of a motion for continuance amounts to a constitutional violation only if there is an unreasonable and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay and the defense is actually prejudiced by the denial of a continuance), *cert. denied*, __ S. Ct. __, 2007 WL 559985 (U.S. Feb. 26, 2007) (No. 06-8548).

### 2. Application

Defense counsel stated during *voir dire* that he intended to call Allen Farria as a witness. (Tr. I at 7.)[1] On the second day of trial after the prosecution had rested its case and defense

---

[1] The trial occurred over the course of four days, but the transcript of trial consists of two volumes, individually paginated. For ease of reference, the Court will refer to the volumes as Tr. I (May 22, 2001), and Tr. II (May 23 - 25, 2001).

counsel had presented Eddie Pauldo as a witness, defense counsel informed the trial court that he had talked to an additional witness, Allen Farria, who indicated on several occasions that he wanted to testify.  Defense counsel explained that, on the previous night, he had spoken with Farria and his wife by telephone.  Mrs. Farria stated that Mr. Farria was taking medication and suffered from depression.  Defense counsel then spoke directly with Mr. Farria, who was incoherent.  Mrs. Farria nevertheless promised to do her best to have her husband present in court on the following afternoon.

Defense counsel concluded from the fact that the Farrias were not present at trial that Mr. Farria was incapable of testifying that day.  Counsel expected Mr. Farria to testify that, on the day before the shooting, the victim had threatened to kill Petitioner, to rape and kill Petitioner's wife, and to blow up Petitioner's house.  (Tr. II at 83-84.)

The trial court stated that it did not appear that Mr. Farria would be coming forward and that there was no reason to delay the trial for that purpose.  (*Id*. at 85.)  The Michigan Court of Appeals determined that the trial court's decision not to delay the trial was not an abuse of discretion.

Defense counsel was diligent in interviewing Mr. Farria and in procuring Farria's presence at trial.  Defense counsel also was specific in what he expected Farria's testimony to be.  However, he did not speculate as to when Farria would be available, and he did not request a continuance to procure Farria's testimony, nor object when the trial court stated that it would proceed without Farria.

Although the anticipated testimony might have shown that Petitioner had reason to fear the victim, the victim's threats on the day before the shooting did not justify the murder.  *See*

*infra*, section IV.B.1.  Furthermore, testimony that the victim had threatened Petitioner in the past would have been cumulative.  Kelvin Watts testified that, a few weeks before the shooting, the victim told Petitioner that he was going to kill Petitioner and his wife, (Tr. II at 47-48), and Eddie Pauldo testified that, four or five days before the shooting, the victim had threatened to beat up Petitioner.  (*Id*. at 76 and 79-80.)

The Court concludes that the trial court's decision not to adjourn the trial for some undetermined date when Mr. Farria might have been coherent and willing to testify was not arbitrary or capricious and did not result in actual prejudice to the defense.  Therefore, Petitioner was not deprived of his right to present a defense, and the state court's decision was not contrary to, or an unreasonable application of, Supreme Court precedent.

## B.  The Jury Instructions

Petitioner alleges next that the trial court erred in refusing to instruct the jury on the lesser-included offense of manslaughter.  In his motion to amend, Petitioner also challenges the trial court's jury instruction on reasonable doubt.

### 1. Voluntary Manslaughter

Petitioner alleges that the trial court should have instructed the jury on voluntary manslaughter because the jury could have concluded from testimony about the victim's prior threats that Petitioner was provoked into shooting him.  Petitioner claims that the provocation negated the element of premeditation, which is an element of first-degree murder.

The trial court refused to give a jury instruction on voluntary manslaughter because there was no evidence indicating that the killing was done in the heat of passion and no information from which a reasonable person could conclude that there was adequate provocation.  (Tr. II at

9

90.) The Michigan Court of Appeals subsequently stated that, because the evidence did not support a finding of reasonable provocation, the trial court was not required to give a voluntary manslaughter instruction.

### a. Lesser Included Jury Instructions

The United States Supreme Court has not decided whether due process requires the giving of jury instructions on lesser-included offenses in non-capital cases. *See Beck v. Alabama*, 447 U.S. 625, 638 n.14 (1980). The Court of Appeals for the Sixth Circuit has concluded from the Supreme Court's decision in *Beck* that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001) (citing *Bagby v. Sowders*, 894 F.2d 792, 795-97 (6th Cir. 1990) (*en banc*)). "[F]ailure to instruct on a lesser included offense in a noncapital case is not 'such a fundamental defect as inherently results in a miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002) (quoting *Bagby*, 894 F.2d at 797).

### b. On the Merits

One could conclude that first-degree murder, which is punishable by Michigan's most severe penalty, is equivalent to a capital crime. However, even assuming that Petitioner's claim is cognizable on habeas review, there is no substantive merit in the claim.

A defendant generally "is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988) (citing *Stevenson v. United States*, 162 U.S. 313 (1896)). *Mathews* is not controlling if there is no basis on which to overcome the state court's factual

findings that there was insufficient evidence to support the defendant's theory. *Mitzel v. Tate*, 267 F.3d 524, 537 (6th Cir. 2001). A jury instruction on a lesser-included offense "is only required when 'there was evidence which, if believed, could reasonably have led to a verdict of guilt of a lesser offense,' but not the greater." *Campbell*, 260 F.3d at 541 (quoting *Hopper v. Evans*, 456 U.S. 605, 610 (1982)).

In Michigan,

> [w]hen a defendant is charged with murder, instructions for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence. *People v. Mendoza,* 468 Mich. 527, 541; 664 N.W.2d 685 (2003). To prove voluntary manslaughter, the prosecution must prove that: (1) the defendant killed in the heat of passion; (2) the passion was caused by adequate provocation; and (3) there was no lapse of time during which a reasonable person could have controlled his passions. *People v. Sullivan,* 231 Mich. App. 510, 518; 586 N.W.2d 578 (1998), *aff'd* equal division 461 Mich. 992, 609 N.W.2d 193 (2000). The degree of provocation required to mitigate a killing from murder to manslaughter "is that which causes the defendant to act out of passion rather than reason." *Id.* In order for the provocation to be adequate it must be "that which would cause a reasonable person to lose control." *Id.* (emphasis deleted). "The determination of what is reasonable provocation is a question of fact for the fact-finder." *Id.* However, "[w]here, as a matter of law, no reasonable jury could find that the provocation was adequate, the court may exclude evidence of the provocation." *Id.*

*People v. Tierney*, 266 Mich. App. 687, 714-715; 703 N.W.2d 204, 222-23 (2005). Simply stated, "[a] defendant properly convicted of voluntary manslaughter is a person who has acted out of a temporary excitement induced by an adequate provocation and not from the deliberation and reflection that marks the crime of murder." *People v. Townes*, 391 Mich. 578, 590; 218 N.W.2d 136, 141 (1974).

The testimony at trial established that the victim was standing across the street from Petitioner's home for five to ten minutes before Petitioner appeared on the scene with a shotgun. The victim did not move or say anything to Petitioner, and he was unarmed. In addition, as the

11

Michigan Court of Appeals recognized,

> there was no evidence that Gibson [the victim] had physically harmed Barnett. While Gibson had previously made numerous threats, there was no indication that he intended to carry them out. Words alone are generally not adequate provocation. Witnesses testified that Barnett fired two shots as he walked across the street to where Gibson was standing, then shot him. Clearly, the distance Barnett walked gave him time to reflect on his actions and tended to negate an act of passion.

*Barnett*, Mich. Ct. App. No. 239517, at 3 (footnote omitted). Furthermore,

> one witness testified that he overheard Barnett tell Gibson, "I told you I was going to kill you if you keep messing with me." This indicates a deliberate and reasoned act, which negates Barnett's claim of provocation. In addition, another witness testified that Barnett told him that if Gibson did not leave him alone he "was going to do what he had to do."

*Id.* at 3-4.

This Court agrees with the state court's conclusion that the evidence did not support a finding of reasonable provocation and, therefore, the trial court was not required to give a voluntary manslaughter instruction. Petitioner's conduct was deliberate and apparently premeditated. Consequently, the lack of a jury instruction on voluntary manslaughter did not deprive Petitioner of a defense for which sufficient evidence existed. The state court's decision was not contrary to, or an unreasonable application of, *Matthews*.

### 2. Reasonable Doubt

Petitioner alleges in his motion to amend that the trial court's instruction on reasonable doubt conveyed very little information as to what constituted reasonable doubt. He contends that the instruction lessened the State's burden of proof and that there remains a substantial possibility that the jury may have reached its verdict on an improper ground.

The question on habeas review of a jury instruction is not whether the instruction was

"undesirable, erroneous, or even 'universally condemned.'" *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). Instead, before a federal court may overturn a state conviction, the instruction must have violated a "right which was guaranteed to the defendant by the Fourteenth Amendment" or the instruction must have "so infected the entire trial that the resulting conviction violates due process." *Id*. at 146-47. The Supreme Court has "defined the category of infractions that violate 'fundamental fairness' very narrowly," *Dowling v. United States*, 493 U.S. 342, 352 (1990), and the fact that an instruction may have been incorrect under state law is not a basis for habeas corpus relief. *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991).

The trial court instructed the jury that Petitioner was presumed innocent and was not required to do anything. The court also explained that the prosecutor had to prove every element of the crimes beyond a reasonable doubt before the jurors could find Petitioner guilty. The court defined "reasonable doubt" as

> a fair, honest doubt growing out of the evidence or lack of evidence. It is not an imaginary doubt or a possible doubt, but a doubt based on reason and common sense. A reasonable doubt is just that, a doubt that is reasonable after a careful and considered examination of the facts and the circumstances of this case.

(Tr. II at 122.) The Sixth Circuit has upheld the constitutionality of this instruction and determined that the instruction does not lower the government's burden of proof. *See Binder v. Stegall*, 198 F.3d 177, 179 (6th Cir. 1999).

Moreover, the trial court instructed the jury on Petitioner's theory of self defense and on the right to use force in certain circumstances. The court explained that, "If a person acts in lawful self-defense, his actions are excused and he is not guilty of any crime." (Tr. II at 130.) The court also stated:

> [t]here's been some evidence that the complainant or decedent may have

13

>    committed violent acts in the past, and that the defendant knew about these acts or
>    threats.  You may consider this evidence when you decide whether the defendant
>    honestly feared for his safety.

(*Id*. at 132.)

The jury instructions as a whole were fundamentally fair and adequately informed the jury of the prosecution's burden of proof and the concept of reasonable doubt.  Petitioner is not entitled to the writ of habeas corpus on the ground that the jury instruction on reasonable doubt was incorrect or inadequate.

### C.  Challenges to the Evidence

Petitioner alleges that there was insufficient evidence adduced at trial to support his conviction for premeditated murder.  In his motion to amend, Petitioner also asserts a claim of actual innocence.

#### 1.  Sufficiency of the Evidence

Petitioner alleges that the trial was replete with support for his claim that he acted in self defense or was provoked into killing the victim.  He claims that the jurors were confused about this aspect of the charge and that they rendered a verdict inconsistent with the evidence.

The Michigan Court of Appeals noted on review of this claim that first-degree murder entails willful, deliberate, or premeditated killing.  The court of appeals concluded that, because the evidence did not support a claim of self-defense or sufficient provocation, the prosecutor presented sufficient evidence for a rational factfinder to find Petitioner guilty of first-degree murder.

##### a.  Legal Framework

"[T]he Due Process Clause protects the accused against conviction except upon proof

beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970).  After *Winship,* the critical question on review of the sufficiency of the evidence to support a criminal conviction is

> whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt.  [T]his inquiry does not require a court to 'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'  Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (internal citation and footnote omitted) (emphasis in original).  This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law," *id*. at 324 n.16, and through the framework of 28 U.S.C. § 2254(d), *Martin v. Mitchell*, 280 F.3d 594, 617 (6th Cir. 2002).

In Michigan, jurors may convict a defendant of murder "only when they are convinced beyond a reasonable doubt that (1) the defendant intended (actually or impliedly) to kill and (2) circumstances of justification, excuse or mitigation do not exist." *People v. Morrin*, 31 Mich. App. 301, 323; 187 N.W.2d 434, 445 (1971).  First-degree premeditated murder requires a finding that the defendant acted with premeditation and deliberation. *Id.*, 31 Mich. App. at 328; 187 N.W.2d at 448-49.

> To premeditate is to think about beforehand; to deliberate is to measure and evaluate the major facets of a choice or problem.  [P]remeditation and deliberation characterize a thought process undisturbed by hot blood.  While the minimum time necessary to exercise this process is incapable of exact determination, the interval between initial thought and ultimate action should be long enough to afford a reasonable man time to subject the nature of his response to a "second look."

*Id.*, 31 Mich. App. at 329-30; 187 N.W.2d at 449 (footnotes omitted).

Premeditation and deliberation may be proved by circumstantial evidence. *See People v.*

*Herndon*, 246 Mich. App. 371, 415; 633 N.W.2d 376, 404 (2001). Factors that may be considered when determining whether the defendant premeditated and deliberated a murder are: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 229 Mich. App. 293, 300; 581 N.W.2d 753, 757 (1998).

### b. Application

It was undisputed that Petitioner shot and killed Douglas Gibson. The defense was that Petitioner believed he was protecting his family and himself and that, at most, the offense was manslaughter. Thus, the only question is whether the circumstances justified, excused, or mitigated the shooting.

The testimony established a contentious relationship between Petitioner and the victim. There was evidence that Petitioner and the victim had a heated discussion a few weeks before the shooting and that the victim had threatened to kill Petitioner and his wife. There was additional evidence that, four or five days before the shooting, the victim threatened to beat up Petitioner. But there was no evidence that the victim was a threat to Petitioner on the day in question. He was unarmed and went to the neighborhood where Petitioner lived to see someone's pet. No one heard him threaten or provoke Petitioner that day, and although he was bigger and considerably younger than Petitioner, it was Petitioner who was the antagonist. Petitioner approached the victim with a deadly weapon and said, "I told you I was going to kill you if you kept messing with me." Earlier that same day, Petitioner had said that, if the victim did not leave him alone, he was going to do what he had to do.

Petitioner's remarks and conduct suggest that he planned the shooting and acted deliberately. The interval between the victim's prior threats and Petitioner's third gunshot, which struck the victim in the chest, was more than enough time to afford a reasonable man time to subject the nature of his response to a "second look."

A rational trier of fact could have concluded that Petitioner was guilty of premeditated murder. Therefore, the state court's determination that the evidence was sufficient to support the first-degree murder conviction was not contrary to, or an unreasonable application of, *Jackson*.

## 2. Actual Innocence

Petitioner claims to be innocent of first-degree murder, but "a claim of 'actual innocence' is not itself a constitutional claim." *Herrera v. Collins*, 506 U.S. 390, 404 (1993). Moreover, the evidence against Petitioner as summarized above was substantial. "[W]hatever burden a hypothetical freestanding innocence claim would require, this petitioner has not satisfied it." *House v. Bell*, __ U.S.__, __, 126 S. Ct. 2064, 2087 (2006).

## V.  Conclusion

The state appellate court's decision was based on a reasonable determination of the facts, and it was not contrary to, or an unreasonable application of, Supreme Court precedent. Accordingly, the Court DENIES Petitioner's application for the writ of habeas corpus. Petitioner's motion to amend [Doc. 19, Aug. 4, 2006] has been GRANTED and addressed above. His motions for an evidentiary hearing and appointment of counsel [Doc. 17, Aug. 2, 2005] are DENIED as unnecessary.

s/John Corbett O'Meara<br>
United States District Judge

Dated:  March 15, 2007

I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, March 15, 2007, by electronic or ordinary mail.

                                                s/William Barkholz
                                                Case Manager